# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DUANE McATEE,**

        **Plaintiff,**

**_vs._**                         **CIVIL ACTION NO. 1:13cv18**

**OFFICER F.S. TOOTHMAN,**
**COUNTY OF HARRISON,**
**LIEUTENANT DOUG BETLER,**
**MAGISTRATE KEITH MARPLE,**
**JUDGE THOMAS BEDELL,**
**TRACI M. COOK, ESQUIRE,**
**JOINTLY AND SEVERALLY,**

        **Defendants.**

## <u>REPORT AND RECOMMENDATION/OPINION</u>

This matter is before the undersigned pursuant to Defendants County of Harrison and Traci M. Cook, Esq.'s Motion to Dismiss [D.E. 20]; Officer F.S. Toothman and Lieutenant Doug Betler's Motion to Dismiss [D.E. 27]; and Motion to Dismiss Filed on Behalf of Defendants Magistrate Marple and Judge Bedell [D.E. 30]. Plaintiff, pro <u>se</u>, Duane McAtee, filed his Response to the Motions (Entitled "Affidavit of Stated Facts") [Docket Entry 35]. Plaintiff also filed an "Affidavit of Stated Facts Motion for Summary Judgement" [D.E. 39]. Defendants Marple and Bedell filed a "Response to Affidavit of Stated Facts Motion for Summary Judgment" [D.E. 42]. Plaintiff filed an "Affidavit Memorandum in Response to the Defendants Counsel" [D.E. 43]. Defendants Toothman and Betler filed a "Response to Plaintiff's Affidavit Memorandum in Response to the Defendants Counsel" [D.E. 44]. The motions were referred to the undersigned United States Magistrate Judge by United States District Judge Irene M. Keeley [D.E. 22 ].

Based on a careful review of the record the undersigned finds the motions to dismiss should be **GRANTED**; Plaintiff's Motion for Summary Judgment should be **DENIED**; the actions as against all defendants should be **DISMISSED**; and this action stricken from the docket of the court.

# I. THE COMPLAINT

The undersigned accepts Plaintiff's allegations as true, for purposes of the defendants' Rule

12(b)(6) motions to dismiss.  Waterford Citizens' Ass'n. v. Reilly,  970 F.2d 1287 (4th Cir. 1992).

The undersigned has carefully reviewed the parties' motions and related memoranda, and because

the plaintiff is pro se, has liberally construed the plaintiff's pleadings.  See Haines v. Kerner, 404

U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)(holding pro se complaint to less stringent standards

than formal pleadings drafted by lawyers).  Plaintiff introduces his Complaint as follows:

> This is an action brought by Plaintiff against State/County Officials acting under the
> color of Law for civil rights violations involving wrongful arrest, unlawful search and
> seizures, criminal trespass, negligence, and unlawful detention.

> Plaintiff alleges his causes of action under the Fourth, Fifth, Sixth, Ninth, and Fourteenth

Amendments.  The following is taken directly from his Complaint.

2.	On October 24, 2012, at approximately 11:30 a.m. I Duane McAtee was traveling in my
	private conveyance headed north bound on I-79 when OFFICER TOOTHMAN PULLED
	ME OVER and asked for my license.  I handed him my Affidavit of DUANE MCATEE and
	my live birth record.

3.	I told him that I didn't need a license because I have the Right to travel without one.  He said
	that there was a warrant out for my arrest.  I asked for the lawful warrant but he could not
	provide one for me.  Officer TOOTHMAN repeatedly asked for my license.  He made the
	statement that I don't have to make this difficult, and that I needed to get out of the car now.
	I informed him that I didn't want to do business with him.  Under duress and the threat of
	violence I got out of my private conveyance and OFFICER TOOTHMAN arrested me and
	kidnaped me to the police department in Bridgeport.

4.	I asked Officer Toothman for the lawful warrant for my arrest he could not provide any
	verifiable proof of evidence.  I asked where was the injured party?  Officer Toothman did not
	have an answer.

5.	While in handcuffs Doug [B]etler informed me that I needed to give him my fingerprints.
	I asked him to provide the law that says that I have to give my fingerprints against my will.
	See criminal COMPLAINT.

6.	I WAS LATER ARRAIGNED BY MAGISTRATE Marple and no bail was set on my behalf.

From there I was taken to North Central Regional Jail where I remained from October 24, 2012 until November 16, 2012. I was there for a total of 24 days. On November 16, 2012, I was transferred to the Fayette County Jail in Pennsylvania where I stayed until November 24, 2012.

7.    These officers acting under the color of law were informed they were violating the Constitutional protections of Plaintiff.

8.    At all times mentioned Defendants were not engaged in serving or carrying out any criminal process nor did they have any lawful reason to engage Duane.

9.    Any reasonable public servant would know the actions of Betler, Cook, and Toothman deprived Duane of his Rights secured by the 4th, 5th, Amendments, purviewing the 14th amendments.

10.   Judge Thomas Bedell never brought a valid claim against me Duane McAtee a living man. During the time of the alleged incident I was not working for the government nor was I on a payroll of record. You Judge Thomas Bedell have brought sham legal process against me Duane McAtee without any regards to my Rights protected by God pursuant to the Constitution. As an addendum, Judge Bedell converted a civil matter into an alleged criminal action. Take notice: According to the federal rules of civil procedure Rule 1, there is only one form of action a civil action. Furthermore, any reasonable judge should have known without fail that all courts are administrative and can only hear cases of public officials. Administrators Procedural Act, chapter 150(a)(b). Duane never worked in the capacity of a public official during the time of this alleged incident nor was he a member of the military.

Plaintiff's prayer for relief requests as follows:

Declaring Duane immunity of himself and his property from arrest or seizure except under a warrant of law. He owes nothing to the public so long as he does not trespass upon their rights.

Entering a preliminary injunction restraining and enjoining the defendants from undertaking, enforcing, maintaining, or adopting policies, procedures and practices or acts of and contacting or ordering Duane in any restrictive ways but upon lawful probable cause hearing, lawful warrant or lawful complaint was sworn and subscribed affidavits from the injured party.

As compensatory damages, the sum of $48,000,000.00

As punitive damages the sum of $10,000,000.00.

## II. MOTIONS TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a case when a complaint fails to state a claim upon which relief can be granted. Dismissal under Rule 12(b)(6) is inappropriate unless it appears beyond doubt that the plaintiff cannot prove any set of facts to support his or her allegations. Revene v. Charles County Comm'rs, 882 F.2d 870 (4th Cir. 1989). Courts, however, are not required to accept conclusory allegations couched as facts and nothing more when ruling on a motion to dismiss pursuant to 12(b)(6). A complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct.1955, 167 L.Ed.2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. To survive a motion to dismiss a plaintiff must state a plausible claim in his complaint that is based on cognizant legal authority and includes more than conclusory or speculative factual allegations. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id.; see also Nemet Chevrolet, Ltd. v. Comsumeraffairs.com, Inc., 591 F.3d 250 (4th Cir. 2009). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." Id.

The question of whether a complaint is legally sufficient is measured by whether it meets the standards for a pleading stated in Rule 8 (providing general rules of pleading), Rule 9 (providing rules for pleading special matters), Rule 10 (specifying pleading form), Rule 11 (requiring the

signing of a pleading and stating its significance), and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted.  <u>Francis v. Giacomelli</u>, 588 F.3d 186 (4th Cir. 2009).

Plaintiff brings this action <u>pro se</u>, which requires the Court to liberally construe his pleadings. <u>Estelle v. Gamble</u>, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251(1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)(per curiam); <u>Loe v. Armistead</u>, 582 F.2d 1291 (4th Cir. 1978); <u>Gordon v. leeke</u>, 574 F.2d 1147 (4th Cir. 1978).  <u>Pro se</u> pleadings are held to a less stringent standard than those drafted by attorneys.  <u>Haines</u>, 404 U.S. at 520.  Even under this less stringent standard, however, the <u>pro se</u> complaint is still subject to dismissal.  <u>Id.</u> at 520-21.  The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so.  <u>Barnett v. Hargett</u>, 174 F.3d 1128 (10th Cir. 1999).   A court may not construct the plaintiff's legal arguments for him.  <u>Small v. Endicott</u>, 998 F.2d 411 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented." <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274 (4th Cir. 1985).

Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. <u>Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.</u>, 267 F.3d 30 (1st Cir. 2001)(<u>cited</u> with approval in <u>Witthohn v. Federal Ins. Co.</u>, 164 Fed. Appx. 395 (4th Cir. 2006)(unpublished).  There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint.  Specifically, a court may consider official public records, "documents incorporated into the complaint by reference, and matters of which the court may take judicial notice," or sources "whose accuracy cannot reasonably be questioned."  <u>Katyle v. Penn Nat'l Gaming, Inc.</u>, 637 F.3d 462 (4th Cir. 2011).  <u>Id.</u>  "A district court may clearly take judicial notice of these public records .

. ." Witthohn, supra (permitting district court to take judicial notice of public documents, such as court records, even when the documents are neither referenced by nor integral to plaintiff's complaint.) "Thus, . . . the court's consideration of the prior judicial record did not convert Appellees' motion to dismiss into a motion for summary judgment." Id.

Defendants Toothman and Betler and Marple and Bedell attached to their Motions public records and prior judicial records from both the Harrison County Circuit Court case and the Fayette County [Pennsylvania] Court of Common Pleas case. The undersigned may, and does, take judicial notice of these records.

"Bridgeport Police Department Arrest Report" (Toothman Exhibit A), indicates that on October 24, 2012, Plaintiff was arrested for the offenses of "Fugitive from Justice - - DUI 1st" and "Obstructing an Officer." The narrative states that Officer Toothman conducted a traffic stop on a white Audi bearing WV registration [] with an expired registration sticker. Officer Toothman approached the driver and asked for his license. The driver gave the officer his birth certificate and an affidavit identifying himself as Duane Philip McAtee. After running the name and date of birth through headquarters, the name came back as an NCIC hit. The dispatcher informed the officer that Plaintiff was wanted out of Fayette County, Pennsylvania for failure to appear for a 1st Offense DUI. Further, the officer was informed that Pennsylvania was willing to extradite Plaintiff. At this point Officer Toothman arrested Plaintiff as an extraditable fugitive from justice. Plaintiff refused to provide his fingerprints to Officers Toothman and Betler. He was then also charged with obstructing an officer.

Officer Toothman transported Plaintiff to the Harrison County courthouse to appear before Magistrate K. Marple. The magistrate set Plaintiff's bond at $1,000.00 for the obstruction charge,

but "was unable to set a bond for the warrant out of Pennsylvania due to their wanting extradition." Officer Toothman then transported Plaintiff to the North Central Regional Jail, which took custody.

Exhibit D contains the Criminal Docket for Duane Philip McAtee's criminal case in Fayette County, Pennsylvania. It shows Plaintiff was provided hand-delivered Notice on January 9, 2012, to appear for trial on February 6, 2012. The next entry, dated February 6, 2012, directs the Clerk of Court to prepare a bench warrant for failure to appear for trial.

Also included in Exhibit D is a "Bench Warrant" for "Failure to Appear" issuing from the Court of Common Pleas, Fayette County Courthouse, Uniontown, Pennsylvania. The Warrant was issued against Plaintiff for "Failure to Appear" for trial on the "Lead Offense" of 1st Offense DUI.[1] The Bench Warrant is signed by Judge Ralph Warman and specifically states:

> AND NOW, this 6th day of February 2012, the Sheriff of Fayette County, or any other police officer, is hereby ORDERED to convey and deliver Duane Philip McAtee, residing at [], Metz, WV 26585, into the custody of the Court of Common Pleas of Fayette County, at Fayette County Courthouse . . . for a hearing. If the Court is unavailable, the individual may be held in the County Jail until the Court is opened for business.

The Bench Warrant also explicitly states: "Extradition Surrounding States Only." It is undisputable that West Virginia is not only a surrounding state, but is adjacent to and shares boundaries with Pennsylvania. The RETURN OF WARRANT signed by Officer Toothman states that "By Authority of this warrant [] I took Duane P. McAtee into custody."

Exhibit E is the "Order Following Initial Appearance" out of the Circuit Court of Harrison County, West Virginia. The document shows Plaintiff appeared before Circuit Court Judge John Lewis Marks, Jr., on October 29, 2012. Plaintiff was in the custody of the Harrison County Sheriff.

---

[1]Plaintiff was also charged with "DUI: High Rate of Alcohol (BAC .10-.16) 1st Offense" and "Improper Stop." See Exhibit D page 17.

Also appearing was Traci Cook, Assistant Prosecuting Attorney, as well as Plaintiff's counsel, Jack Clarke, the Assistant Public Defender. "Thereupon, the defendant, Duane Philip McAtee, interrupted the proceedings and advised the Court that he did not want counsel." After further discussion, the Court excused the public defender. "Whereupon the Court acknowledged that the defendant was arrested on October 25, 2012, based on a fugitive from justice warrant from the Commonwealth of Pennsylvania for a capias issued for failure to appear. Whereupon the Court advised the defendant that he has a right to the issuance and service of the warrant upon him. Furthermore, the Commonwealth of Pennsylvania must send the proper paperwork to the Governor of West Virginia in order to obtain a Governor's warrant." "Thereupon the defendant moved that bond be set in this matter, which motion was denied by the Court in its discretion, to which the defendant objected on the basis of hearsay." The Court ordered a hearing be held on November 26, 2012, at 2:15 p.m. for service of the Governor's Warrant, and ordered Defendant committed to the North Central Regional Jail until further order of the Court.[2]

On November 13, 2012, Plaintiff (Defendant in the underlying case) appeared for further proceedings in the Circuit Court for Harrison County, West Virginia, at which time he advised the Court that he desired to waive extradition to the State of Pennsylvania. Upon inquiry, Plaintiff advised that he understood the consequences of his waiver of extradition, and that his waiver was freely and voluntarily made. It was therefore consequently ordered that the Commonwealth of Pennsylvania take custody of Plaintiff on or before November 16, 2012, and he be released from the North Central Regional Jail to the custody of Detective James Caccimello, for transport to the

---

[2]The Harrison County Circuit Court Orders were each certified as true copies by Donald L. Kopp, II, Circuit Clerk for the Fifteenth Judicial Circuit.

Commonwealth of Pennsylvania.

The Docket Entry for the Fayette County, Pennsylvania Court for November 16, 2012, states: "Bench Warrant Returned" and "Order Scheduling Hearing on Bench Warrant Disposition." <u>See</u> Exhibit D page 15. The entry for November 20, 2012, states: "Order Granting Motion to Revoke Release and Forfeit Bail – McAtee, Duane Philip." Plaintiff's unsecured bond was revoked and reset to $10,000.00 monetary (10% cash). It was only at this point that the warrant was lifted. <u>Id.</u> at page 21. Bail was posted on November 26, 2012.

On November 19, 2012, the Harrison County Circuit Court was advised that the Commonwealth of Pennsylvania took custody of McAtee on November 16, 2012. On motion of the State, it was therefore adjudged and ordered that the extradition matter be dismissed.

Finally, and of great significance in this case, is the docket entry from the Court of Common Pleas of Fayette County, Pennsylvania, dated January 7, 2013, stating: "The Court Finds the Defendant Guilty." Exhibit D at page 24. He was found guilty on all three counts – DUI– 1st Offense, DUI: High Rate of Alcohol (BAC .10-.16) 1st Offense, and Improper Stop.

Plaintiff filed his Complaint in this Court on February 1, 2013, after he had already been tried and found guilty of the underlying charges.

The undersigned takes judicial notice of these public records. <u>See</u> <u>Witthohn</u>, <u>supra</u>.

### III. DISCUSSION

#### A. Eleventh Amendment

The Complaint does not appear to bring suit against any of the defendants in his or her official capacity, but in an abundance of caution, the undersigned will address the issue. To the extent he may be bringing suit against any of the defendants in his or her official capacity, each is

entitled to immunity pursuant to the Eleventh Amendment.  The Eleventh Amendment prohibits federal courts from entertaining an action against a state.  See, e.g., Alabama v. Pugh, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978)(per curiam)(citations omitted); Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).  Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," Cromer v. Brown, 88 F.3d 1315 (4th Cir. 1996), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself."  Will v. Mich. Dept. of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)(internal citation omitted.)  As a result, to the extent Plaintiff has alleged claims against Defendants in their official capacity they are entitled to immunity pursuant to the Eleventh Amendment.

## B.  Power of the State to Regulate Highways

At the heart of this matter is Plaintiff's assertion that the State of West Virginia has no power or threshold authority under the United States Constitution over him because he is "a living, breathing sentiment [sic] being on the land, a living man and therefore . . . not any ARTIFICIAL PERSON, and, therefore, is exempt from any and all identification, treatment, and requirements as such pursuant to any process, law, code, or statute of any color of law thereof."  In other words, Plaintiff essentially premises the entire case on the proposition that the process involving all those who participated, from his traffic stop to his extradition to Pennsylvania, was and is "void."  As a result, Plaintiff believes he has stated claims under the constitution.[3]

---

[3]Plaintiff also claims Defendant's violated the "International Bill of Rights."  The International Bill of Rights is not a legal document with the force of law and could only be binding, if at all, on those individuals who have signed it.  No individual or entity involved in

10

The Supreme Court has acknowledged that, under our system of dual sovereignty, "[]the powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. Amend. X; Wyeth v. Levine, 555 U.S. 555, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009). This reservation includes the exercise of a state's police power. To the extent Plaintiff premises his arguments on the proposition that provisions of the Constitution remove jurisdiction from the states over the regulation of highways within their borders:

> [T]he federal Constitution does not . . . deprive the states of the right to reasonably regulate under their police power the use of their public highways, and to that end to require a license and impose a reasonable charge therefore, for the privilege of such use, even if thereby interstate commerce is incidentally affected, provided that such regulation, license, and charge bear a reasonable relation to the safe and proper maintenance and protection of such highways, do not obstruct or burden interstate commerce, and are not in conflict with federal legislation on the same subject enacted within constitutional limitations.

Liberty Highway Co. v. Michigan Public Utilities Commission, 294 F. 703 (D. Mich. 1923)(citing Escanaba & Lake Michigan Transportation Co. v. Chicago, 107 U.S. 678, 2 S.Ct. 185, 27 L.Ed. 442 (1883); St. Louis v. Western Union Telegraph Co., 148 U.S. 92, 13 S.Ct.485, 37 L.Ed. 380 (1893);

_____

this case has signed the document. That document is therefore irrelevant to this case. Instead, it is, as stated on its own web page:

> [A]n association of individuals from all over the world who believe it is possible for humanity to reach a written agreement to live together embodied in an International Bill of Rights. The process for people internationally to reach this agreement is a simple one. We ask everyone, including Presidents of nation [sic], restaurant workers or engineers, the same three questions about an International Bill of rights: 1) Will you Read it? 20 Will you Sign it? 3) Will you Share it?

The stated mission "is to have at least 10% of humanity sign this International Bill of Rights, humanity's written agreement to live together." Http://www.internationbillofrights.org (Accessed May 30, 2013).

Minnesota Rate Cases, 230 U.S. 352, 33 S.Ct. 739, 57 L.Ed.(1913); Hendrick v. Maryland, 235 U.S. 610, 35 S.Ct. 140, 59 L.Ed. 385 (1915); Kane v. State of New Jersey, 242 U.S. 160, 37 S.Ct. 30, 61 L.Ed. 222 (1916); Mackay Telegraph & Cable Co. v. City of Little Rock, 250 U.S. 94, 39 S.Ct. 428, 63 L.Ed. 863 (1919).

Therefore, to the extent that Plaintiff premises the action on his assertion that the State of West Virginia (or the Commonwealth of Pennsylvania, the State from which the original arrest warrant issued for failure to appear for trial on a charge of DUI) did not have power to regulate his use of highways within its own borders, and to enforce such regulations by the exercise of its police powers, his claim fails as a matter of law. For this reason, the claims Plaintiff alleges that are based on his underlying assertion that the State of West Virginia had no jurisdiction over him should be dismissed.

## C. Absolute Immunity (Defendants Bedell and Marple)

Defendants Judge Thomas Bedell and Magistrate Keith Marple argue the Doctrine of Judicial Immunity is a complete bar to the individual capacity claims Plaintiff has asserted against them. The defense of absolute immunity extends to "officials whose special functions or constitutional statute requires complete protection from suit." Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Judges, whether presiding at the state or federal level, are clearly among those officials who are entitled to such immunity. Stump v. Sparkman, 435 U.S. 349, 98 S.Ct.1099, 55 L.Ed.2d 331 (1978). Because it is a benefit to the public at large, "whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences," Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), absolute immunity is necessary so that judges can perform their functions without harassment or intimidation. "Although unfairness

and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" Mireles v. Waco, 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991)(quoting Bradley v. Fisher, 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646 (1871)).

The Fourth Circuit follows the precedent of the United States Supreme Court in holding that judicial officers enjoy absolute immunity from suit for actions they took in their judicial capacities. See King v. Myers, 973 F.2d 354 (4th Cir. 1992); Pressly v. Gregory, 831 F.2d 514 (4th Cir. 1987.)

In determining whether a particular judge is immune, inquiry must be made into whether the challenged action was "judicial" and whether at the time the challenged action was taken the judge had subject matter jurisdiction. See Stump, 435 U.S. at 356. Unless it can be shown that a judge acted in the "clear absence of all jurisdiction," absolute immunity exists even when the alleged conduct is erroneous, malicious, or in excess of judicial authority. Id. at 356-57.

Plaintiff's bare assertion here that his warrantless arrest lacked probable cause does not negate the jurisdictional authority for the actions taken by Magistrate Marple or Judge Bedell. There are no facts in the pleadings which demonstrate that these judges shed their immunity. There was a bench warrant issued out of the State of Pennsylvania for Defendant's arrest as a fugitive from justice, for failure to appear. The bench warrant expressly ordered any officer to convey and deliver Defendant into the custody of the Court of Common Pleas of Fayette County, at Fayette County Courthouse, and further stated he was extradictable, based upon which Magistrate Marple denied bond.

Defendant next had an Initial Appearance before Circuit Judge Marks, who set a hearing date

and also denied bond. Finally, on November 13, 2012, Defendant appeared before Circuit Judge Bedell and advised the Court that he desired to waive extradition to the State of Pennsylvania. Upon inquiry, Plaintiff advised that he understood the consequences of his waiver of extradition, and that his waiver was freely and voluntarily made. Defendant executed six (6) waivers in open court, waiving extradition to the Commonwealth of Pennsylvania. Judge Bedell then ordered that the Commonwealth of Pennsylvania take custody of Plaintiff on or before November 16, 2012. Judge Bedell ordered the extradition matter be dismissed only after the Commonwealth of Pennsylvania took custody of Defendant pursuant to the extradition.

The undersigned finds the conduct of which Plaintiff complains against each of these defendants centers on each judge's discharge of his judicial duties. There are no facts in the pleadings which demonstrate that these judges shed their immunity. The undersigned United States Magistrate Judge therefore **RECOMMENDS** the motions to dismiss as to Judge Bedell and Magistrate Marple be **GRANTED**.

As to these two defendants, the Court need not address whether Plaintiff's complaint satisfied the requirements of Fed. R. Civ. P. 8 under Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed. 868 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) because the issues raised under those cases have been rendered moot by the application of judicial immunity. Even if they were not rendered moot, however, the undersigned is of the view that Plaintiff could not assert valid claims against either of the judicial officers on the facts he has alleged in the Complaint and incorporated affidavits. In other words, if required to address the sufficiency of the pleading, the undersigned would find Plaintiff has failed to state a cognizable claim against these defendants, and on this additional ground their motion to dismiss should be granted.

## D. Absolute Immunity (Defendant Cook)

Similarly, a West Virginia State Prosecutor is a quasi-judicial officer who enjoys absolute immunity when performing prosecutorial, as opposed to investigative or administrative, functions. See Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), Ostrzenski v. Seigel, 177 F.3d 245 (4th Cir. 1999). Absolute immunity is designed to protect judicial process, thus the inquiry is whether the prosecutor's actions are closely associated with judicial process. See Burns v. Reed, 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). Specifically, a prosecutor is entitled to absolute immunity "for initiating a prosecution and in presenting the state's case." Id. However one wishes to read Plaintiff's Complaint and his affidavits, the undersigned finds it cannot be disputed that at all times Cook was acting in her official capacity as a prosecutor. The undersigned therefore **RECOMMENDS** Cook's motion to dismiss on this ground also be **GRANTED**.

Moreover, the claim against Defendant Cook is comprised of conclusions and labels, rather than facts sufficient to pass muster under Iqbal and Twombly. Cook's motion to dismiss on this ground is also well taken and should be sustained irrespective of immunity.

## E. Defendants Toothman and Betler

Plaintiff does not dispute that Officer Toothman pulled him over for having an expired registration sticker. He does not dispute that he did have an expired registration sticker. He also admits he did not have a driver's license. Instead, he claims that West Virginia has no authority to regulate and enforce his use of the highways, as he was not driving a motor vehicle, but "traveling in his private conveyance." He therefore "exercise[s] his right to travel with impunity without a license!!!" (Exclamation points in original). As already found, to the extent that Plaintiff premises the action on his assertion that the State of West Virginia (or of Pennsylvania, for that matter, the

State from which the original arrest warrant issued for DUI) did not have power to regulate his use of highways within its own borders, and to enforce such regulations by the exercise of its police powers, his claim fails as a matter of law. For this reason, the claims Plaintiff alleges that are based on his underlying assertion that the State of West Virginia had no jurisdiction over him should be dismissed.

The gravamen of his Complaint against Officer Toothman seems to be that there was an absence of probable cause for the initial stop and the charges that followed. However, in his own affidavit setting forth the facts relating to the stop, Plaintiff states that Officer Toothman stopped him for improper display (expired registration sticker). Moreover, he conceded that he did not produce a valid operator's license as is required by West Virginia law. If that were not enough to establish probable cause for both the stop and charges, and the undersigned finds it was, probable cause was also established for the arrest when the officers discovered that Plaintiff was wanted on a bench warrant from Pennsylvania, as a fugitive from justice for failure to appear, and that Pennsylvania would extradite. In fact, the official documents from Pennsylvania show Plaintiff was extradited by Pennsylvania, was held, bond was revoked and then reinstated, and he was found guilty in Pennsylvania of the original charges in that State. Plaintiff therefore fails to state a constitutional claim for an alleged unconstitutional arrest by Officer Toothman.

As to Plaintiff's complaints against officer Betler, they too do not rise to the level of constitutional violations. By his own Complaint, Plaintiff states that Officer Betler "commented that my private conveyance will be searched," "informed me that I needed to give him my fingerprints," commanded Officer Toothman to place him under arrest, and was negligent because he "did nothing to preserve Duane's rights." For the same reasons the Complaint against Officer Toothman fails to state a constitutional claim, so too does the Complaint against Officer Betler.

## F. Qualified Immunity (Toothman and Betler)

Defendants Toothman and Betler further argue that they are entitled to qualified immunity from personal civil liability. Qualified immunity protects government officials performing discretionary functions from civil sit as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that as clearly established at the time of the alleged violation such than an objectively reasonable official in the official's position would have known of the right. Id. further, qualified immunity is "an immunity from suit rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct.2806, 86 L.Ed.2d 411 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[] and . . . whether that right was clearly established at the time of the alleged violation.'" Wilson v. Layne, 526 U.S. 603, 199 S.Ct. 1692, 143 L.Ed.2d 818 (1999). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken." Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 640.

Liberally construing the Complaint in this case, Plaintiff alleges an unreasonable search and seizure. U.S. Const. Amend. IV. "A person is seized by the police and thus entitled to challenge the

government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement through means intentionally applied." Brendlin v. California, 551 U.S. 249, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). Seizures are "reasonable" only if based on probable cause. Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed. 2d 824 (1979). The Fourth Amendment is enforceable against the States through the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

There is no doubt Plaintiff was seized on or about October 24, 2012. He was arrested. The test to determine whether probable cause existed for that seizure is an objective one, based on the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 103 S.Ct.2317, 76 L.Ed.2d 527 (1983). See also Mazuz v. Maryland, 442 F.3d 217 (4th Cir. 2006)("Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken.") The totality of the circumstances includes "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information," Beck. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), and such facts and circumstances constitute probable cause if they are "sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Id. "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." Atwater v. City of Lago Vista, 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001).

Officer Toothman stopped Plaintiff's vehicle for an expired registration. Plaintiff's argument that he was not driving a motor vehicle, but a "conveyance" is without merit and, frankly, frivolous.

A "vehicle" is defined in W.Va. Code section 17-B-1-1(a) as "Every device in, upon, or by which any person or property is or may be transported or drawn upon a public highway, excepting devices moved by human power or used exclusively upon stationary rails or tracks." Further, 17-B-1-1(b) defines a motor vehicle as "[e]very vehicle which is self-propelled . . . ." In the context of traffic stops, even minor traffic violations give officers probable cause to conduct a traffic stop. Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). An officer's subjective motive does not invalidate a traffic stop that is supported by probable cause. Id. at 813.

West Virginia Code section 17A-9-2(a) provides:

No person shall operate . . . upon any highway any vehicle required to be registered under this article unless there shall be attached thereto and displayed thereon or shall be in the possession of the operator when and as required by this chapter a valid registration card and registration plate or plates issued therefore by the department for the current registration year, except as otherwise expressly permitted in this chapter.

Plaintiff's vehicle is required to be registered under the chapter. Further, he is not subject to any of the exemptions in the chapter. Pursuant to 17A-9-2(c), any person violating the provisions of this section is guilty of a misdemeanor. The undersigned therefore finds the traffic stop was clearly proper.

Once Plaintiff was lawfully stopped, he admits that he also did not produce a driver's license.

W.Va. Code section 17B-2-1 provides:

No person, except those hereinafter expressly exempted, may drive any motor vehicle upon a street or highway in this state or upon any subdivision street used by the public generally unless the person has a valid driver's license issued pursuant to this code for the type or class of vehicle being driven.

Further, 17-B-2-9 requires:

Every licensee shall have his or her driver's license in such person's immediate

> possession at all times when operating a motor vehicle and shall display the same, upon demand of a magistrate, municipal judge, circuit court judge, peach officer, or an employee of the division.

Again, Plaintiff is not subject to any of the exemptions in this section. A violation of this section is also a misdemeanor.

Finally, and most significantly, Plaintiff was not arrested until the officer called in his name and birthdate and was informed there was a warrant for his arrest out of Pennsylvania. Plaintiff's argument that the officer did not show him the warrant is, again, irrelevant and frivolous. The officer received the information from the dispatcher when he called in from his patrol car. Even if that information had been incorrect (and the evidence shows it was not) "[t]he validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." Michigan v. DeFillippo, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). "The Constitution does not guarantee that only the guilty will be arrested. If it did, section 1983 would provide a cause of action for every defendant acquitted – indeed, for every suspect released." Baker v. McCollan, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Accordingly, the probable cause standard is lower than the standard to convict – probable cause requires only "a reasonable ground for belief of guilt" Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), While to convict a defendant, the State must prove the defendant's guilty beyond a reasonable doubt. See, e.g., United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). Thus, neither subsequently dropped charges nor an acquittal indicate a lack of probable cause for an arrest.

Here, although Plaintiff admits he was driving a vehicle with an expired sticker and without

a license, he claims he had not committed a traffic offense.  As already noted, this claim is based on Plaintiff's argument  that the State of West Virginia does not have the authority to regulate the highways within its own border.  As already found, this argument is without merit.  Plaintiff therefore has failed to demonstrate that Officer Toothman's decision to initiate the traffic stop was not objectively reasonable.  Moreover, the evidence of record demonstrates both Officer Toothman's and Officer Betler's actions <u>were</u> objectively reasonable.  Officer Toothman initiated the traffic stop because he observed an expired registration sticker on the vehicle, a clear violation.  After stopping the vehicle, Plaintiff admittedly did not produce a driver's license, another clear violation.  Finally, the officers were advised that there was an outstanding fugitive warrant for Plaintiff out of Pennsylvania.  Therefore, based on the record, it was objectively reasonable for the officers to conduct a traffic stop, conclude they had sufficient suspicion to detain Plaintiff for purposes other than to conduct the traffic stop, and arrest Plaintiff.  Significantly, the State of Pennsylvania did extradite Plaintiff, did take him into custody, and ultimately did find him guilty of the original charge.  In other words, his guilt was proved beyond a reasonable doubt.

Plaintiff also briefly argues that the search of his vehicle was unconstitutional.  Even if the vehicle was searched, the undersigned finds this was not a violation of Plaintiff's civil rights.  The Fourth Amendment generally requires police to secure a warrant before conducting a search.  A warrantless search may nevertheless be valid . . . if the search falls within one of the narrow and well-delineated exceptions to the Fourth Amendment's warrant requirement."  <u>United States v. Matthews</u>, 591 F.3d 230 (4th Cir. 2009).  One exception to the warrant requirement is an inventory search.  <u>Id.</u> at 234.  "An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car),

and to protect against false claims of loss or damage," <u>Whren</u>, 517 U.S. at 811. Accordingly, "[t]he policies behind the warrant requirement are not implicated in an inventory search, nor is the related concept of probable cause." <u>Colorado v. Bertine</u>, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987).

Therefore, the undersigned concludes Defendants Toothman and Betler are entitled to qualified immunity with respect to Plaintiff's claims against them.

### G. Harrison County

Plaintiff also asserts a claim against Harrison County for failure to train and supervise its employees. In his Eighth Cause of Action, Plaintiff alleges:

> Defendant County of Harrison has created a custom or policy to detain and kidnap men and women without exigent circumstances, consent or a lawful warrant as the [sic] acting in concert with Defendants BETLER, TOOTHMAN, COOK, BEDELL, MARPLE who have deprived Duane of his constitutionally protected 1st, 4th, 5th, 6th, and 14th amendment rights.

> Plaintiff further claims that the County is jointly and severally liable for his damages.

"A municipality or other local government may be liable under this section if the government body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." <u>Monell v. Dept. Of social Services</u>, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); <u>Board of Commissioners of Bryan County v. Brown</u>, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); <u>Shaw v. Stroud</u>, 13 F.3d 791 (4th Cir. 1994); <u>Miltier v. Beorn</u>, 896 F.2d 848 (4th Cir. 1990). Under section 1983, local governments are responsible only for "their own illegal acts." They are not vicariously liable under section 1983 for their employees' actions. <u>See</u> <u>id</u>. at 691.

> The language of section 1983, read against the background of the [] legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature cause a constitutional tort. In particular, we conclude that a municipality cannot be held

liable solely because it employs a tortfeasor - - or, in other words, a municipality cannot be held liable under section 1983 under a respondeat superior theory.

Monell v. Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) Further,

> We conclude, therefore, that a local government may not be sued under section 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under section 1983.

Id.

In other words, to prove a 1983 claim against a municipality, a plaintiff must prove that "action pursuant to official municipal policy" caused their injury. Id. "To state a cause of action against a municipality, a Plaintiff must plead (1) the existence of an official policy or custom; (2) that the policy or custom is fairly attributable to the municipality; and (3) that the policy or custom proximately caused the deprivation of a constitutional right." Alexander v. City of Greensboro, 762 F. Supp. 2d 764; see Jordan ex. rel Jordan v. Jackson, 15 F.3d 333 (4th Cir. 1994). A "policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so "persistent and widespread" as to constitute a custom or usage with the force of law." Lytle v. Doyle, 326 F.3d 463 (4th Cir. 2003). Such customs may be attributed to a local government if the duration and frequency of the practices rises to a level so that the governing body may be deemed to have constructive knowledge that the practices have become customary among its employees. Spell v. McDaniel, 824 F.2d 1380 (4th Cir. 1987). "Constructive knowledge may be evidenced by the fact that the practices have become so widespread and flagrant that in the proper exercise of its

official responsibilities the governing body should have known of them." Id.

A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. See Oklahoma City v. Tuttle, 471 U.S. 808 (1985)("A 'policy' of 'inadequate training' "is far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell"). To satisfy the statue, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of person with whom the [untrained employees] come into contact." Canton, 520 U.S. at 388. Only then "can such a shortcoming be properly thought of as a 'policy or custom' that is actionable under section 1983." Id. at 389.

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Bryan County, supra at 410. Thus, when county policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policy makers choose to retain that program. Id. at 407. The county's "policy of inaction" in light of notice that its program will cause constitution al violations "is the functional equivalent of a decision by the [county] itself to violate the Constitution." Canton at 395. A less stringent standard of fault for a failure-to-train claim 'would result in de facto respondeat superior liability on municipalities . . . ." Id. at 392.

Here, as already found, Plaintiff has failed to show he was subjected to a constitutional tort at all. Even if he was able to show a constitutional tort, he has not even discussed how the County participated in the events or showed tacit authorization of them. Nor has he articulated the policies which allegedly caused the deprivation of his rights. The discussion need not proceed any further.

The undersigned RECOMMENDS Defendant County of Harrison's Motion to Dismiss be GRANTED.

## IV.  Summary Judgment

Because this Opinion recommends dismissal of the case in its entirety, the undersigned further recommends Plaintiff's "Affidavit of Stated Facts Motion for Summary Judgment" filed April 16, 2013 [Docket Entry 39] be **DENIED** as mooted by this opinion.

## RECOMMENDATION

For all the above reasons, the undersigned United States Magistrate Judge **RECOMMENDS** Defendants County of Harrison and Traci M. Cook, Esq.'s Motion to Dismiss [Docket Entry 20] be **GRANTED;** Defendants Officer F.S. Toothman and Lieutenant Doug Betler's Motion to Dismiss [Docket Entry 27] be **GRANTED**; Defendants Magistrate  Keith  Marple and Judge Thomas A. Bedell's Motion to Dismiss [Docket Entry 30] be **GRANTED**; Plaintiff's "Affidavit of Stated Facts Motion for Summary Judgment" [Docket Entry 39] be **DENIED;** and this action be dismissed and stricken from the docket of the Court.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation,  file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.  A copy of such objections should be submitted to the Honorable Irene M. Keeley, United States District Judge.  Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.  28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn,

474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel of record and to Plaintiff pro se by Certified United States Mail.

Respectfully submitted this 12th day of June, 2013.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE